**PALESTINE TELEPHONE COMPANY,**
Appellant,

v.

**LOCAL UNION 1508 OF the INTERNA-TIONAL BROTHERHOOD OF ELEC-TRICAL WORKERS, Appellee.**

No. 24211.

United States Court of Appeals
Fifth Circuit.

June 20, 1967.

Rehearing Denied July 21, 1967.

George E. Seay, Dallas, Tex., Malone, Seay & Gwinn, Dallas, Tex., of counsel, for appellant.

L. N. D. Wells, Jr., and Mullinax, Wells, Mauzy, Levy & Richards, Dallas, Tex., for appellee.

Before RIVES, WISDOM and GOLD-BERG, Circuit Judges.

PER CURIAM:

This appeal by the Palestine Telephone Company is from an adverse judgment of the United States District Court for the Eastern District of Texas, ordering appellant to arbitrate under the terms of a collective bargaining agreement with appellee, Local Union 1506 of the International Brotherhod of Electrical Workers.

The judgment of the District Court will be affirmed on the well reasoned and pertinently documented opinion, copy of which is appended hereto, by the late Judge Joe W. Sheehy, our respected and beloved colleague who served with distinction as Chief Judge of the United States District Court for the Eastern District of Texas.

Affirmed.

## APPENDIX.

The Plaintiff-Union has brought this action under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. Sec. 185, on behalf of certain of its members who are employees of the Defendant-Company, to compel arbitration of the question of whether the hiring of a new employee in preference to present

employee applicants constituted a violation of the collective bargaining agreement under the circumstances in this case. The pertinent facts as found from the stipulations and evidence introduced at the trial of this cause are as hereinafter set forth.

Local Union 1506 of the International Brotherhood of Electrical Workers, hereinafter called the Union, and the Defendant, Palestine Telephone Company, hereinafter called the Company, executed a collective bargaining agreement dated May 22, 1964. In accordance with the requirements of Article VII of the Agreement that the Company post notices within the plant of the various job vacancies which occur, on or about May 11, 1965, the Company posted a notice on the bulletin board announcing a vacancy as "Cashier-Clerk in the Commercial Department at Palestine, Texas." The notice went on to state the qualifications and requirements of the job and the method for making application. Three female employees of the Company, who are also members of the Plaintiff-Union, working in the Traffic Department, within the week submitted written bids for the posted vacancy. Thereafter, each said applicant was interviewed by a representative of the Company, but none of these applicants was promoted or reassigned to fill this vacancy. Instead, the Company selected a new employee, that is, a person who had never previously worked for the Company, to fill the vacancy on June 28, 1965.

The three female employees bidding for the job did not contact their immediate supervisor nor file individual grievances in writing. However, an agent of the Local Union, Mr. Latham, protested that the Union applicants had received unfair treatment in a conversation with the Company's Vice President, Rucker, as early as June 24, 1965. After the new employee reported to work, additional oral conversations were had concerning the Union's objection to the treatment of its member applicants, and a lengthy series of oral discussions and written communications between Mr. Latham and Mr. Johnson, President of the Company, and other representatives of the Union and Management, were had. These discussions culminated in a demand by the Union that the matter be referred to a Board of Arbitration in accordance with the terms of the collective bargaining agreement. The Company responded that the alleged grievance was not an arbitrable matter under the terms of the agreement, and accordingly the Company would not be willing to agree to submit the question to a Board of Arbitration. Thereafter, on November 12, 1965, the Union initiated this action seeking specific enforcement of the arbitration provisions in the collective bargaining agreement and that the Defendant-Company be required to arbitrate the alleged grievance.

■ Whether a particular controversy under a collective bargaining agreement is subject to arbitration is a matter to be determined by the Court on the basis of the contract. The Supreme Court has discussed at length the Court's role in interpreting arbitration agreements:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steel

Workers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed. 2d 1409 (1960).

A portion of the difficulty in this case lies in the fact that there is some confusion between the parties and in the pleadings as to the precise nature of the grievance which the Union seeks to arbitrate. In the original Complaint, the Union alleged *"the hiring of a new employee* rather than the present employees who had bid for the job vacancy constituted a discrimination against present employees covered by the contract * * * " which was in violation of Arts. VII and VIII of the contract. In the Union's trial brief, it is stated that "the preference of outsiders while *failing to consider for promotion* present employees is clearly a 'grievance' within the broad definition specified in this contract."

The Company, on the other hand, steadfastly takes the position that it should not be compelled to arbitrate because the "alleged grievance involved the *hiring of a new employee,* which is a right resting solely and exclusively in the Company with no obligation to arbitrate the Company's decision", and relies on Article VIII, Sec. 2 to substantiate its position. On page 2 of its reply brief, the Plaintiff-Union answers "What is here in issue is *not* employer's right to hire * * * What *is* in issue is employer's failure to consider present employees for promotion."

In the Court's view, there are two distinct issues involved in this controversy under the present state of the pleadings, and the rights and obligations of the parties are not identical as to each aspect.

█ The first of the two prongs in the Union's complaint is directed toward the apparent issue of whether the Company complied with Art. VII, Sec. 1 of the Agreement in that it failed to give proper *consideration* to the present employees' applications for promotion. The second prong of the Union's complaint is directed toward Management's substantive decision of the *merits* of these applications, and poses the issue of whether the Company's action in failing to promote or reassign the employee applicants was supported by "just and lawful cause," as required by Art. VIII, Sec. 2. As has been pointed out in numerous decisions, the scope of arbitrability is a matter to be determined from the language of the collective bargaining agreement. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed. 2d 898 (1964) ; Atkinson v. Sinclair Refining Company, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) ; United Steel Workers v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ; United Aircraft Corporation v. International Association of Machinists, 5 Cir., 360 F.2d 150 (1966). The pertinent provisions of the contract here in dispute are as follows:

Under the provisions of Sec. 3 of Art. 1, in order to be a proper subject of arbitration proceedings, a dispute must fit within the definition of a "grievance" and first have been prosecuted faithfully and timely through the procedure set out for the negotiation and settlement of disputes between Management and employees or the Union. A "grievance" is defined in this langauge:

"A grievance is defined as and limited to a complaint filed by an employee or employees or the Local Union alleging failure of the Company to comply with or carry out some provision or provisions of the Agreement and must not be based on any alleged understanding, practice or other matter outside the scope of this Agreement."

█ Thus, it is evident from this language, and the Court so finds, that it was contemplated by the parties to this Agreement that the grievance procedures set forth up to and including arbitration, could only be invoked by either an employee or employees, or the Union by filing a complaint alleging the failure of the Company to comply with the provisions of the contract.

■ Art. VII, Sec. 1, provides in pertinent part, "The Company will consider all employees in making the assignments, promotions and demotions, and when two (2) or more employees are under consideration for promotion, and the respective ability and personal fitness are substantially equal in the judgment of the Company, the person with the greater seniority will receive the promotion." This provision of course, by its very nature implies "good faith" consideration of employee's application. As is best illustrated in the Union's Reply Brief, at least one prong of its complaint is an assertion that the Company has failed to comply with this portion of the Agreement, in that the Company discriminated against the employees and that their applications were not given fair or good faith consideration before hiring an outsider to fill the vacancy. The Court finds that this allegation or complaint that the employees' applications were not afforded good faith consideration by the Company, whether filed by the individual employees or the Union, falls within the scope of a "grievance" as defined in the Agreement, and, therefore, it presents a proper subject for arbitration. Furthermore, there is no clause or provision anywhere in the Agreement which would suggest a limitation on the right to arbitrate this issue of fair consideration of the employees' applications for job vacancies. Therefore, the Company will be required to arbitrate this question, providing it is found that the Union has adequately complied with the procedural aspects of the Agreement.

The second aspect of this controversy presents a more difficult question—whether the Company's action in failing to promote or reassign the employee applicants was supported by "just * * * cause", as required by Art. VIII, Sec. 2 of the Agreement. The provision in question is as follows:

"Section 2. The right to hire, re-assign, promote, demote, lay off, and discharge employees, for just and lawful cause, and the disposition and number of the working forces shall rest solely and exclusively in the Company. However, each employee discharged, improperly re-assigned, demoted or laid off shall possess the right to appeal within seven (7) days through the grievance procedure beginning at the third step as provided by the terms of this Agreement.

All rights and privileges which ordinarily are vested in the management, except those which are clearly relinquished herein by the Company, will continue to be vested in and exercised by the Company."

■ The Company repeatedly asserts herein that the alleged grievance involved the hiring of a new employee which is a right solely and exclusively within the discretion of the Company, unburdened with any right to appeal by an employee or duty to aribitrate its judgment in these matters. The contract does not give such absolute discretion. In the exercise of the rights enumerated in this Article, the Company has bound itself to exercise its privilege in accordance with the standard of "just and lawful cause". Even while it is clear that it was the parties' intention in including this Section to grant considerable authority in the matters listed, and understandability to preserve management's judgment in these areas from unwarranted interference, the parties nevertheless agreed that there were certain limits to management's privilege and provided that its discretion in these matters could be challenged on the basis that it was not exercised with "just * * * cause". Therefore, a complaint filed by an employee or the Union that the Company failed to comply with this standard of "just cause" in the exercise of its authority to hire, promote or reassign an employee would constitute a grievance under the definition in the Agreement.

However, the rights of the parties to resort to the procedures listed in Art. I in order to resolve a grievance of this nature are not clearly defined. Art. I contemplates that both the individual employees or the Local Union as a separate entity shall have the right to file a com-

plaint and invoke the grievance procedures. In the opinion of the Court, if the second sentence in Sec. 2, Art. VIII, had not been included in the contract, under the broad authority granted in Art. I both the individual employees and the Union as an entity would have the right to file a complaint asserting that the Company's action in regard to any one of the listed categories was without just cause. However, the second sentence of Sec. 2 defines the situation in which an *employee* shall be able to appeal through the grievance procedures and expressly includes *only* employees "discharged, improperly re-assigned, demoted or laid off." The employees in the present case clearly do not fall within any of these categories. Whether the situation in this case is characterized as a failure to hire, a failure to promote, or a failure to reassign, the circumstances in this instance would not come within the *expressly* appealable actions set forth in Sec. 2 of Art. VIII.

It is a reasonable construction of this provision to determine that under the general provisions of Art. I the individual employees would have been vested with the right to challenge the Company's action with respect to any of these categories as being without just cause. But by the specific inclusion of certain instances where an employee could appeal the Company's action under Art. VIII, the parties thereby intended to *exclude* the right of an employee to appeal in all other instances. Therefore, since the right to challenge the Company's decision in failing to hire, failing to promote, or failing to reassign is not mentioned in Art. VIII, Sec. 2, the Agreement denies the individual employee access to the grievance procedure in regard to these matters.

■■ However, it must be noted that the second sentence of Sec. 2 is not a *grant* of authority which states an exclusive remedy; rather it is a *limitation* of the general rights granted in Art. I to both the individual and the Union to invoke the grievance procedure to resolve disputes with the Company concerning compliance with the terms of the Agreement. The restrictive portions of Art. VIII, Sec. 2, make no mention of the rights of the *Union* as an entity. Thus, this sentence cannot be construed as depriving the *Union* as an entity of whatever rights it had under Art. I to invoke the grievance procedures, including arbitration, in order to resolve the question of whether in failing to hire, promote, or reassign the employees in question the Company's action was for "just \* \* \* cause". A reading of the contract as a whole indicates that there is at least a good argument that the parties did not intend to deprive the Union of this right, or to exclude entirely the matters discussed in Art. VIII, Sec. 2 from arbitration. While it is understandable that the Company would desire to be protected from having to arbitrate with every individual employee who is not promoted or reassigned, it is nevertheless easy to see that the Union would naturally seek to preserve its right to complain and possibly arbitrate the question that the general hiring, promoting and reassigning practices do not conform to the test of "just and lawful". Furthermore, at the last renegotiation of the contract, the evidence shows that several limitations on the right to appeal management's decisions were added, but no attempt was made to restrict the Union's privilege in regard to these matters. It would have been a very simple matter if this had been their intention, to specify when amending Art. VIII, Sec. 2 that the second sentence of that section contained the only rights of appeal that were contemplated and specifically precluded all others; or in amending Art. I, Sec. 6, which listed matters specifically excluded from arbitration proceedings, the right to appeal from the Company's decisions in these matters could have been added to this section. They were not. Thus, there is at least a good argument that it was not the intention of the parties to so restrict the Union's rights. At least, it cannot be "said with positive assurance. that the arbitration clause is not susceptible of an interpretation that covers

the asserted dispute," especially since all "doubts should be resolved in favor of coverage". The Supreme Court has placed a further difficult burden on one who seeks to avoid arbitration in such instances:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." United Steel Workers v. Warrior & Gulf Navigation Company, supra, 363 U.S. at pages 584–585, 80 S.Ct. at page 1354. See also Columbian Carbon Company v. International Union of Operating Engineers, 360 F.2d 1018 (5 Cir. 1966).

Under these rules of construction, the Court concludes that the Union as an entity has standing to pursue within the grievance procedures, through arbitration if necessary, the complaint that in failing to hire, promote, or reassign the employee applicants the Company's actions were without just cause.

 The remainder of the controversy between the parties in this case results from the Company's assertion that there was a procedural fault in the Union's processing of this grievance, and that the Union and the employees involved waived whatever rights they had by failing to originate and handle the matter within the time provided by the Agreement. The Company asserts that these are matters to be determined by this Court because of the provision in Art. I, Sec. 3: "In the event the Company takes the position that the grievance is not an arbitrable matter, the initial decision as to whether same is or is not arbitrable shall be made by the court having proper jurisdiction, unless both parties by mutual agreement decide to submit the question of arbitrability to the Board of Arbitration." The court is of the opinion and finds that this language in the contract does not alter what was already the established rule in this

regard. As was stated by the Supreme Court in the *Warrior* case, "The Congress * * * has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate." 363 U.S. 574, at 582, 80 S.Ct. 1347 at 1353. The provision of the collective bargaining agreement cited in this instance merely restates what was already the well settled law. The Court does not find that it was the parties' intention in including this provision to extend the usual authority of the Court to include questions of procedure. "Once it is determined * * * that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918 (1964); Columbian Carbon Company v. International Union of Operating Engineers, supra. Therefore, the question of whether there was a procedural fault in the processing of the grievance which would permit the Company to refuse to arbitrate the dispute in question will not be determined by this Court. That matter will be left to the arbitrator.

Without undertaking to determine what the facts are or will be shown to be, or in any way passing upon the merits of the dispute or the procedural questions involved, the Court decides only that the Company is under a duty to arbitrate with either the employee or the Union as an entity the question of whether the Company has failed to comply with the provisions of Art. VII, Sec. 1, of the Agreement in that it failed to give good faith consideration to the present employees' appplications. In addition, the Court finds that it is the duty of the Company under the Agreement to arbitrate the complaint filed by the Union as an entity asserting that in failing to promote or reassign the employee applicants the Company failed to comply with the standard of just cause required by Sec. 2 of Art. VIII of the Agreement. Judgment

shall be entered ordering that the Company comply with its duty under the collective bargaining Agreement and promptly submit the above two issues to a Board of Arbitration as provided for in the Agreement.

This Opinion shall constitute the Findings of Fact and Conclusions of Law in this cause.

DATED this 8th day of August, 1966.

/s/ Joe W. Sheehy

UNITED STATES DISTRICT JUDGE