OIL, CHEMICAL AND ATOMIC WORK-
ERS' INTERNATIONAL UNION,
LOCAL 4–447, Plaintiff-Appellee,

v.

CHEVRON CHEMICAL COMPANY,
Defendant-Appellant.

No. 86–3236.

United States Court of Appeals,
Fifth Circuit.

April 28, 1987.

Robert B. Mitchell, Samuel Lang, Rich-
ard M. Moyed, New Orleans, La., for de-
fendant-appellant.

Melanie Leavit, New Orleans, La., for
plaintiff-appellee.

Before REAVLEY and RANDALL, Circuit Judges, MAHON *, District Judge.

MAHON, District Judge:

Oil, Chemical and Atomic Workers' International Union, Local 4–447 [hereinafter "Local 4–447"] filed this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 et al., seeking to have the District Court compel Chevron Chemical Company [hereinafter "Chevron"] to arbitrate four grievances. Local 4–447 and Chevron entered into a collective bargaining agreement which was in effect at all times relevant to this case. Pursuant to the first grievance, Local 4–447 alleges that Chevron unjustly suspended and terminated Michael Glenn, a union member, in violation of Article I, Section 2 and Article XX, Section 1 of the collective bargaining agreement. The second and third grievances contend that Chevron gave performance appraisals to Paul Jackson and Murray Naquin which were unjust, unfair and discriminatory in violation of Article I, Section 2 and Article XX, Section 1 of the collective bargaining agreement. In the fourth grievance, Local 4–447 alleges that Chevron violated Article III, Section 6 of the collective bargaining agreement by failing to give preference to senior employees in filling certain positions.

Local 4–447 and Chevron filed cross-motions for summary judgment. The District Court granted Local 4–447's motion for summary judgment and ordered the parties to arbitrate the four grievances. Chevron now appeals the decision of the District Court.

### I. Grievance One: Michael Glenn

The parties agree that the substance of the Glenn grievance, wrongful dismissal, is arbitrable under the collective bargaining agreement. The only dispute regarding the arbitrability of the Glenn grievance concerns the timeliness of the Union's request for arbitration. Article XII, Section 10 of the collective bargaining agreement provides, in pertinent part: "Only grievances ... which are processed ... within the time limits herein provided shall be subject to arbitration...." One of the time limits in the contract requires the filing of a request for third-party arbitration fifteen days after the union and company arbitrators meet, excluding Saturdays, Sundays and holidays.[1] With respect to the Glenn grievance, the last day to ask for third-party arbitration was April 24, 1986. Chevron did not receive the request until April 25, 1986, one day after the fifteen day deadline. Local 4–447 submitted affidavits which state under oath that a union representative attempted to file the arbitrator's request on April 24, 1986 but was unable to do so because a Chevron representative was not available at their place of business to receive the request and because Chevron failed to provide an agreed-upon

---

* District Judge of the Northern District of Texas, sitting by designation.

1. The fifteen day period is derived from Article XII, Section 3 and Article XII, Section 9 of the collective bargaining agreement. These sections provide as follows:

   *Section 3.* Effective July 12, 1984: If the dispute is not satisfactorily settled, the Union may request the designation of a third-party arbitrator. Such request shall be mailed in the U.S. Mail or hand delivered to the Company's Employee Relations Supervisor or his designated representative not later than fifteen (15) days from the date the Company and Union arbitrators meet under Section 2 of this Article or the grievance shall be considered abandoned.

   The Company and Union arbitrators shall meet and attempt to reach agreement on a third-party arbitrator within sixty (60) days of the Union's request for designation of a third-party arbitrator. If the Company and Union arbitrators are unable to reach agreement within the sixty (60) days, the Union shall, within five (5) days thereafter, request a list from the Federal Mediation and Conciliation Service or the grievance shall be considered abandoned. Selection of a third-party arbitrator shall be made within thirty (30) days of receipt of the list, or the grievance shall be considered abandoned.

   *Section 9.* In calculating time limits under this Article, Saturdays, Sundays and holidays shall not be counted except where calendar days are specified. Time limitations specified herein shall apply unless extended by mutual agreement in writing. If the time limits specified herein or as extended by mutual agreement are not met by the Union, the case shall be considered abandoned.

maildrop for the purpose of filing arbitration requests.

The issue for this Court to decide with respect to the Glenn grievance is whether the District Court acted correctly when it granted the Union's motion for summary judgment without resolving the factual issue regarding compliance with the timing provisions of the collective bargaining agreement. More specifically, this Court must consider whether the District Court should have considered the question of procedural arbitrability instead of referring the issue to an arbitrator. In answering this question, this Court must draw upon the basic principles of labor law.

In *AT & T Technologies v. Communications Workers of America, et al.,* —— U.S. ——, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court reaffirmed the guiding principles on arbitration which it set out in the *Steelworkers Trilogy. AT & T,* 106 S.Ct. at 1418 (citing *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). The first principle established by the *Trilogy* is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1352. Since parties may arbitrate only issues which they agree to arbitrate, there must be a forum that determines which issues the parties agreed to arbitrate. The second principle gleaned from the *Trilogy* is that the courts are the body which is to determine whether the parties agreed to arbitrate a particular grievance. *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1852–53. The third rule derived from the *Trilogy* limits the inquiry of the courts. The judiciary should determine only whether the parties agreed to submit a grievance to arbitration. The judiciary should not consider the merits of

the claims submitted to arbitration. *American Mfg. Co.,* 363 U.S. at 568, 80 S.Ct. at 1346. The final principle establishes a presumption of arbitrability in that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1852–53.

Chevron contends that *AT & T* requires courts to carefully examine all of the evidence to determine what issues the parties intended for an arbitrator to decide. Chevron cites *AT & T* in support of this contention.

> The issue in the case [AT & T] is whether, because of express exclusion or other forceful evidence, the dispute over the interpretation of Article 20 of the contract, the layoff provision, is not subject to the arbitration clause. That issue should have been decided by the District Court and reviewed by the Court of Appeals; it should not have been referred to the arbitrator.

*AT & T,* —— U.S. ——, 106 S.Ct. at 1420.

Chevron's reliance on this passage is misplaced. One of the foundations on the issue of arbitrability is the Supreme Court decision in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In *John Wiley,* the Supreme Court distinguished between questions of substantive and procedural arbitrability, finding that "[o]nce it is determined, [by a court] . . ., that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley,* 376 U.S. at 557, 84 S.Ct. at 918.

The Supreme Court's decision in *AT & T* in no way alters its decision in *John Wiley.*[2] In *AT & T,* the issue involved wheth-

---

2. It is important to note that the Supreme Court, in *AT & T* was simply reaffirming established principles embodied in the *Steelworkers Trilogy.*

*AT & T,* —— U.S. at ——, 106 S.Ct. at 1418. The Supreme Court did not change the fundamental

er the parties intended for disputes involving the layoff provision to go to arbitration. Whether disputes over layoffs are arbitrable is a question of substantive arbitrability which the *Trilogy* requires the courts to determine.

■ The present case involves an issue of timely compliance with grievance procedures. Questions of timeliness are ones of procedural, not substantive, arbitrability. *Local No. 406, Int'l. Union of Operating Engineers, AFL–CIO v. Austin Co.,* 784 F.2d 1262, 1264 (5th Cir.1986). As such, *John Wiley* instructs that the question of timeliness should be decided by an arbitrator if the underlying substantive claim is arbitrable. The parties in this case agree that the substantive claim in the Glenn grievance, wrongful dismissal, is arbitrable. Thus, the timing issue is also arbitrable.

This holding is supported by our own precedent and by numerous decisions in other circuits. In *Palestine Telephone Co. v. Local Union 1506 of the Int'l Brotherhood of Electrical Workers,* 379 F.2d 234 (5th Cir.1967), this Court held that questions of procedural arbitrability are to be decided by an arbitrator. Palestine Telephone Company and a union representing its employees entered into a collective bargaining agreement. The union contended that the company violated the collective bargaining agreement by failing to consider present employees in filling a vacant position and requested the Court to order the company to arbitrate the issue. This Court found that the dispute was arbitrable if the Union had complied with the procedural aspects of the agreement. *Id.* at 238. The Company asserted that the Union failed to abide by the timing provisions in the contract. After quoting from *John Wiley,* this Court stated: "[T]he question of whether there was a procedural fault ... will not be determined by this court. That matter will be left to the arbitrator." *Id.* at 240. *See also, Local No. 406 Int'l Union of Operating Engineers, AFL–CIO v. Austin Co.,* 784 F.2d 1262, 1265 (5th Cir.1986) (whether union complied with procedural requirements for grievance and arbitration are for arbitrator, not federal court); *Automotive Petroleum & Allied Industries Employees Union, Local No. 618 v. Town & Country Ford, Inc.,* 709 F.2d 509, 512, 514 (8th Cir.1983) (once parties obligated to arbitrate subject matter of dispute, then procedural questions should be left to arbitrator); *Denhardt v. Trailways, Inc.,* 767 F.2d 687, 689 (10th Cir. 1985) (procedural questions are arbitrable if underlying substantive question is arbitrable).

Chevron makes a second argument, based upon the arbitration clause in the present case, that the District Court should decide the procedural issue of timing. As stated earlier, Article XII, Section 10 provides: "Only grievances ... which are processed ... within the time limits herein provided shall be subject to arbitration." Chevron suggests that it logically follows from this that the parties did not agree for the timeliness of grievances to be decided by an arbitrator. As was stated above, the *Trilogy* provides that parties cannot be forced to arbitrate issues which they did not agree to arbitrate. *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1852. Under this principle, Chevron argues that since the parties did not intend for an arbitrator to decide timing issues, such issues are reserved for the courts.

■ The Supreme Court, in *John Wiley,* posited a "rare" situation where the courts *could* decide issues of procedural arbitrability such as the timeliness of grievances. *John Wiley,* 376 U.S. at 557–58, 84 S.Ct. at 918. The Supreme Court stated that a court "could deny arbitration only if it could confidently be said not only that a claim was strictly 'procedural,' ... but also that it should operate to bar arbitration altogether...." *Id.* The Second Circuit interpreted the meaning of this phrase in *Rochester Telephone Corp. v. Com. Workers of America,* 340 F.2d 237 (2d Cir.1965). The appellants, in *Rochester,* contended that the procedural issue in that case was one of the "rare" situations to which the

principles upon which the courts have decided     the issues of arbitrability.

Supreme Court spoke in *John Wiley*. The collective bargaining agreement provided that failure to make a timely demand for arbitration under the collective bargaining agreement resulted in "the grieving party [being] foreclosed from taking the grievance to arbitration." As the timing issue was strictly procedural, the appellant contended that the court should decide the timing issue because if the grievance was untimely, the collective bargaining agreement provided that the claim could not proceed to arbitration. The appellant's contention in *Rochester* is identical to the appellant's contention in the present case. The Second Circuit addressed this argument by first assuming that a court will not order arbitration if "no rational mind" could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear. *Id.* at 239. The Second Circuit then went on to state that the appellant did not meet this test because, based on the facts of that case, an arbitrator could find that the Union met the procedural requirements in the collective bargaining agreement. *Id.*

This logic can be applied to the present case. The Union representative's affidavit states that he attempted to timely demand third party arbitration but Chevron did not have a representative available to receive the demand. Based upon these facts, an arbitrator certainly could find that Chevron waived its right to object to the timeliness of the demand.[3] Accordingly, since there is a legitimate dispute as to the Union's compliance with the procedural requirements, this case does not fit within the "rare" group of cases to which the Supreme Court spoke in *John Wiley*. Rather, the substantive claims of Glenn's grievance are clearly arbitrable and, therefore, *John Wiley* directs that the procedural questions involving the grievance should also be decided by an arbitrator.

Further support for requiring questions of procedural arbitrability to be considered by an arbitrator is found in the collective bargaining agreement entered into between Chevron and Local 4-447. Article XII, Section 7 permits an arbitrator to make, at least, an initial decision as to whether a grievance is arbitrable. Section 7 provides:

> *Section 7. The participation by the Company and/or the Union in an arbitration proceeding under this Agreement and culminating in a ruling that the grievance is arbitrable* and/or an opinion and award on the merits of the grievance shall not be deemed a waiver of, or prejudicial to the right of either party to contest the arbitrability of the grievance or the jurisdiction and authority of the Board of Arbitration in proceedings for a declaratory judgment or to set aside the award or other appropriate proceedings in any State or Federal court of competent jurisdiction. (emphasis added)

Chevron argues that the parties intended for an arbitrator to consider only timely grievances. Chevron bases this argument on Article 12, Section 10 which provides that "[o]nly grievances ... which are processed ... within the time limits herein provided shall be subject to arbitration...." However, Section 10 does not specify the forum which is to decide the issue of timeliness. By reading Section 7 in conjunction with Section 10, it can be reasonably concluded that the parties intended for the issue of timeliness to be decided by an arbitrator since Section 7 acknowledges that an arbitrator can decide questions of arbitrability. Thus, this Court is unable to say "with positive assurance that the arbitration clause is not susceptible to an interpretation that covers" the procedural issue of timing presented with

---

**3.** An arbitrator could find that the Union complied with the timing provision or that Chevron waived the time provision based upon another ground. Article XII, Section 3 provides that the Union can timely present a request for third party arbitration by *either* delivering the request to Chevron within the fifteen day limit or by mailing the request within the fifteen day limit.

If the Union had chosen to mail the request on the fifteenth day, April 24, 1986, instead of delivering it by hand, then April 25, 1986 would be the earliest date that Chevron could have received the request. This is the day that the Union representative actually delivered the request to Chevron.

the Glenn grievance. *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1852–53. The *Steelworkers Trilogy* directs that when there are doubts, as in this case, as to whether an issue is arbitrable, they should be resolved in favor of arbitration. *Id.* Accordingly, this Court finds that the timing issues relating to Glenn's grievance should be decided by an arbitrator.

II. Grievances Two and Three: Paul Jackson and Murray Naquin

Local 4–447 filed two grievances claiming *inter alia* that Chevron discriminated against Jackson and Naquin in the disciplinary process when it issued performance appraisals on these employees. Article XX, Section 1 of the collective bargaining agreement is a "just cause" provision which prohibits Chevron from discriminating against employees in the disciplinary process.[4]

Chevron asserts that Local 4–447's claims in grievances 2 and 3 are not arbitrable. Under the collective bargaining agreement in this case, only "grievances" which involve "the application or interpretation" of the collective bargaining agreement are arbitrable. (Article XII, Section 1 & (c)). A "grievance" is a "complaint by an employee or the Union against the Company alleging failure to comply with the provisions of this Agreement. Such grievance must be covered by Articles and Sections of this Agreement. Complaints with reference to matters not included in the Articles and Sections of this Agreement shall not be subject to the grievance procedure." (Article XI, Section 3).

Chevron contends that Local 4–447's claims are not arbitrable because they do not constitute a "grievance." Chevron

claims that the performance reports about which Local 4–447 objects are not used in the disciplinary process and, therefore, they are not "covered by the Articles and Sections of this Agreement." As such, they cannot be "grievances" and, consequently, cannot be arbitrated.

The Court is not persuaded by Chevron's argument. The Court finds that there is a "grievance" in this case since the Union complained that Chevron violated Article XX, Section 1 which prevents Chevron from taking disciplinary actions for other than "just cause." A grievance is arbitrable, according to the collective bargaining agreement, if the grievance involves "the application or interpretation" of provisions in the collective bargaining agreement. Whether Chevron violated Article XX, Section 1 by administering the performance reports involves an "application" of that provision to the facts of this case.

■ The courts' role is very limited when deciding issues of arbitrability. The courts' function is to decide whether the claim asserted is the type of claim which the parties have agreed to arbitrate. *AT & T,* 106 S.Ct. at 1418; *Oil, Chem. & Atomic Workers Int'l. Union v. Southern Union Gas Co.,* 379 F.2d 774, 776 (5th Cir.1967). In no way are the courts to consider the merits of a party's claim. *AT & T,* 106 S.Ct. at 1419.

■ On the face of the collective bargaining agreement, it is clear that the claim asserted—discriminatory disciplinary action by Chevron—is prohibited by Article XX, Section 1 of the agreement. Further, the arbitration provision provides for arbitration of grievances involving the "application" of any Article and Section of the

---

**4.** Article XX—Management Rights, Section 1 provides that:

Subject to the Articles and Sections of this agreement, the Company reserves and retains all rights and inherent functions vested in it as owner and operator of its business, including, but not limited to, the right from time to time to determine or discontinue the number, location and types of its operations, and the methods, processes, equipment and materials *to be employed; and the number of hours per day or week operations shall be carried on;* to

contract out work; to select and determine the number and types of jobs and employees required; to assign employees to jobs; to assign duties to employees; to establish and enforce work rules; and to suspend, discipline and discharge for just cause.

It is agreed that the provisions of this Article shall not be exercised for the purpose of violating the terms of this Agreement insofar as the Union or an individual employee is concerned.

**344**

Agreement. Thus, the agreement requires that Local 4–447's assertion of a violation of Article XX, Section 1 be decided by an arbitrator.

Whether the performance reports are used in the disciplinary process goes to the merits of the grievance. If the performance reports are not used in the disciplinary process, then the Union's claim should be rejected, but the merits of the Union's claim is a decision for the arbitrator and not for the court.

As the Supreme Court stated in *Warrior & Gulf*, arbitration is to be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 363 U.S. at 582–83, 80 S.Ct. at 1852–53. There is no evidence before the Court upon which to find that the parties did not intend for claims of discrimination in disciplinary actions to be arbitrated.

### III. Grievance IV: Seniority Preference Grievance

Local 4–447 filed a grievance claiming that Chevron failed to fill a temporary technician position in accordance with the seniority preference provisions of Article III, Section 6, which provides: "All temporary assignments other than training for a basic job or to fill a vacancy in a basic job will be considered special assignments ... Selection will ... *give preference to senior employees* who are qualified and have satisfactorily performed in their regular assignments." (emphasis added)

Chevron objects to the arbitration of this grievance for reasons similar to those upon which it objects to the arbitration of Grievances 2 and 3. The grievance/arbitration procedure only applies to matters "covered" by the collective bargaining agreement. The agreement only "covers" those job classifications listed in Article I, Section 1 and Article III, Section 1, Exhibit B. The parties have submitted conflicting affidavits as to whether the work performed by temporary technicians fits within one of these provisions.

■ If the work of a temporary technician is not covered by Article I, Section 1 or Article III, Section 1, Exhibit B then the collective bargaining agreement does not "cover" the position and Chevron would not be required to conform to the collective bargaining agreement when hiring employees for the position. One of the provisions with which Chevron would not have to comply is the arbitration clause. Thus, Chevron contends that the District Court should decide whether the temporary technician position is "covered" by the collective bargaining agreement because if it is not, the parties did not agree to arbitrate issues concerning that position. Parties are not required to arbitrate issues which they did not agree to arbitrate. *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1852.

■ This Court finds that Chevron's argument is not persuasive. Local 4–447's claim does constitute a "grievance" since it asserts that Chevron failed to comply with a provision in the collective bargaining agreement—Article III, Section 6. In addition, it is appropriate for this grievance to go to arbitration, since it involves the "application and interpretation" of several provisions in the collective bargaining agreement. Whether the position of temporary technician is covered by the collective bargaining agreement involves an interpretation of Article I, Section 1 and Article III, Section 1. The contract reserves such a determination for the arbitrator. If the position of temporary technician is not covered by the collective bargaining agreement, then Local 4–447's claim that Chevron violated Article III, Section 6 by not hiring employees according to the seniority preference provisions is without merit, but this determination is for an arbitrator since the parties agreed to arbitrate the claim which Local 4–447 asserts.

In sum, the Court finds that the four grievances discussed above are arbitrable. Accordingly, the District Court's order granting summary judgment to Local 4–447 is affirmed.