SMITH BARNEY SHEARSON, INC.

v.

Warren BOONE, Individually and as Trustee for Watercol Profit Sharing Plan, Dated 1/7/90.

Civ. A. 7:93–CV–146–K.

United States District Court, N.D. Texas, Wichita Falls Division.

Dec. 6, 1993.

Charles Watts Flynn, Susan L. Karamanian, Bradley W. Foster, Locke Purnell Rain Harrell, Dallas, TX, for plaintiff.

Tracy Pride Stoneman, Godwin & Carlton, Dallas, TX, for defendant.

## *AMENDED MEMORANDUM OPINION AND ORDER DENYING SMITH BARNEY SHEARSON'S COMPLAINT FOR DECLARATORY JUDGMENT AND MOTION FOR PRELIMINARY INJUNCTION*

BELEW, District Judge.

The Court enters this Amended Memorandum Opinion and Order to supersede its December 2, 1993 Memorandum Opinion Denying Smith Barney Shearson's Motion for Preliminary Injunction.

Pursuant to Fed.R.Civ.P. 65(a)(2), the Court *sua sponte* consolidates Smith Barney Shearson's (SBS) Motion for Preliminary Injunction with a determination of the merits of SBS' Complaint for Declaratory Judgment for reasons discussed *infra.*

After a hearing on SBS' application for a temporary restraining order, the parties agreed to waive their preliminary injunction hearing and submit their dispute on the basis of their motions, affidavits and a stipulation of facts. SBS and Boone's dispute solely concerns interpreting American Stock Exchange arbitration rule 605 (AMEX R. 605) to determine its effect on Boone's pending arbitration claims against SBS.

Because of the nature of this dispute, the Court believes that further evidentiary hearings are unnecessary to resolve this matter. *See,* Fed.R.Civ.P. 43(e) (court may determine matter entirely on the filings) and Fed. R.Civ.P. 78 (court may determine matter without oral argument). Therefore, the Court *sua sponte* consolidates its ruling on SBS' Motion for Preliminary Injunction with determination of SBS' Complaint for Declaratory Judgment.

## I. *BACKGROUND FACTS*

Boone opened several stock accounts with SBS[1] in both his name and in the name of the Watercol Profit Sharing Plan, a retirement plan for his McDonald's franchises. Boone used these accounts to invest in several limited partnerships that ultimately proved unprofitable and are the subject of this litigation. Boone made these purchases from May 4, 1984 to February 18, 1986. Boone filed his arbitration claim on July 13, 1993, over seven and a half years after the last transaction.

The Customer Agreement that Boone signed on opening his accounts with SBS provided that all disputes arising out of his SBS accounts would be arbitrated by Boone's choice of one of several arbitration bodies listed in the Customer Agreement. Boone elected to pursue his claims with the American Stock Exchange (AMEX) and to be bound by its procedural rules.

Boone claims that he knew nothing about the nature of limited partnerships at the time he invested in them and that he relied entirely on the assurances SBS employee Larry Robb that these limited partnerships were risk-proof and right for the retirement income strategy Boone was pursuing.

Boone seeks $1,301,000.00 in damages under a variety of theories including violation of Texas Deceptive Trade Practices and Consumer Protection Act; fraud in real estate and stock transactions under Tex.Bus. & Com.Code § 27.01; violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968); breach of contract; negligence; breach of fiduciary duty; common law fraud and misrepresentation; and fraudulent concealment.

## II. *DISCUSSION*

The dispute SBS and Boone have brought to the Court requires the Court to divine which side the Fifth Circuit will take in a dispute that is currently dividing the other Courts of Appeal.

SBS asks the Court to enjoin an arbitration panel of the American Stock Exchange (AMEX) from hearing Boone's complaints. SBS argues that Rule 605[2] of the AMEX Rules precludes this issue from arbitration because the events complained of occurred over six years before Boone filed his arbitration claim.

The Court's determination of whether Rule 605 is a condition precedent for arbitration eligibility for the Court to decide or whether Rule 605 is a procedural limitation for the arbitration panel to apply will determine the outcome of this dispute.

---

1. For the sake of clarity, the Court will refer to all transactions as if made with Smith Barney Shearson, regardless if made with SBS or one of its predecessors.

2. AMEX Rule 605 reads:

   No dispute, claim or controversy shall be eligible for submission to arbitration in any instance where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

   2 Am.Stock Ex.Guide (CCH) ¶ 9544 (1989).

## A. *PRELIMINARY INJUNCTION*

Because the Court is denying SBS' declaratory judgment, SBS is obviously not entitled to a preliminary injunction. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). Accordingly, the Court **DENIES** SBS' Motion for Preliminary Injunction.

## B. *THE MERITS OF SBS' APPLICATION FOR DECLARATORY JUDGMENT*

In deciding this issue, the Court must examine the state of the law in the Fifth Circuit, in other Circuits and what the Supreme Court has said in analogous areas to determine what the proper rule should be.

▉ It is a settled matter of law that submission to arbitration is a matter bound by the parties' contract—a party cannot be forced to arbitrate what it has not agreed to arbitrate. *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), *citing, Steelworkers v. Warrior & Gulf*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) and *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 570–71, 80 S.Ct. 1363, 1364, 4 L.Ed.2d 1432 (1960).

▉ Since there must be a forum to determine just what the parties have agreed to arbitrate, the courts are the body which decides disputes over what claims the parties may arbitrate, *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418, *quoting, John Wiley & Sons v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964), because it would be unfair to force a party to "arbitrate the arbitrability issue." *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, ——, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991), *quoting, AT & T Technologies*, 475 U.S. at 651, 106 S.Ct. at 1420. In making this determination, a court must not inquire into the merits of the underlying dispute. *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418; *United Steelworkers of America, AFL–CIO v. ASARCO*, 970 F.2d 1448, 1451 (5th Cir.1992) *citing, Oil Chemical Atomic Workers' International Union, Local 4–447 v. Chevron Chemical Co.*, 815 F.2d 338, 343 (5th Cir.1987) ("*Local 4–447*").

▉ Judicial inquiry is therefore limited to issues of substantive arbitrability, the question of whether or not the dispute is covered by the parties' arbitration agreement. Matters of procedural arbitrability are to be left to the arbitrator. *John Wiley & Sons*, 376 U.S. at 557, 84 S.Ct. at 918.

### 1. *Are Boone's claims Covered by the Arbitration Agreement?*

The Fifth Circuit has drawn a clear line separating judicial determination of questions of substantive and procedural arbitrability in *Local 4–447*, 815 F.2d at 340. "Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id., citing, John Wiley & Sons*, 376 U.S. at 557, 84 S.Ct. at 918.

It is clear from Boone's Customer agreement that the claims he is making are of the type Boone and SBS agreed to arbitrate. The Agreement requires that "any disputes relating to [Boone's] investments shall be settled by arbitration in accordance with the rules" of the arbitration organization of Boone's choice. SBS' Original Compl., Application for T.R.O. and Mot. for Prelim. Inj., Ex. C. SBS concurs—"there is no dispute that this controversy is subject to arbitration ... under the Customer Agreement which Boone signed." Pl.'s Resp. to Def.'s Mot. to Dismiss and Mot. to Compel Arbitration at 3. Accordingly, the Court finds that Boone's substantive claims arise out of his investments with SBS and are substantively arbitrable under the provisions of the Customer Agreement.

Boone elected, under the terms of the contract, to have an arbitration panel of the American Stock Exchange hear this dispute, and any arbitration that occurs will be bound by AMEX's rules, including AMEX R. 605.

## 2. Is AMEX R. 605 a Procedural or Substantive Bar?

Now the Court turns to the stickier question of whether AMEX Rule 605 is a procedural or substantive limitation on the arbitrability of Boone's claim.

SBS cites many well reasoned and thorough opinions from outside the Fifth Circuit in support of its claim that AMEX 605 is a substantive limitation on Boone's agreement to arbitrate.[3] SBS includes *Shearson Lehman Brothers v. Glazer Scott Investments,* CA 3–92–0600–T, (N.D.Tex.1992) which held, in an order temporarily restraining arbitration of Glazer Scott's claims, that New York Stock Exchange Rule 603[4] (NYSE R. 603) is a substantive limitation on arbitration contracts. In reaching this decision, the *Glazer Scott* court recognized that "non-binding authority to the contrary exists," referring to, *inter alia, Commerce Park at DFW Freeport v. Mardian Construction Co.,* 729 F.2d 334, 339 n. 5 (5th Cir.1984) where, according to the *Glazer Scott* court, the Fifth Circuit had stated, "in dicta, that whether a request for arbitration was timely or not is a procedural matter to be resolved by the arbitrator." *Glazer Scott Investments* slip op. at 3 n. 1.

The *Glazer Scott* court does not appear to have considered post-*Commerce Park* cases that solidified its rule when it dismissed *Commerce Park* as dicta. *See Local 4–447,* 815 F.2d at 341, *citing, Local No. 406, Int'l Union of Operating Engineers, AFL–CIO v. Austin Co.,* 784 F.2d 1262, 1264 (5th Cir. 1986) (timeliness issues are procedural questions to be answered by the arbitrator, not judicially determinable limitations on the substantive scope of arbitration). SBS' reliance on *Glazer Scott* is, therefore, poorly placed.

A closer examination of *Local 4–447* sheds additional light on the procedural versus substantive limitation question. At issue in *Local 4–447* was a provision in Chevron's arbitration agreement with the union that "[o]nly grievances . . . which are processed . . . within the time limits herein provided shall be subject to arbitration." *Local 4–447,* 815 F.2d at 341. In addressing Chevron's arguments that this timing clause should act as a substantive limit on the union's claims (because Chevron had not agreed to arbitrate untimely claims), the court, following *John Wiley,* 376 U.S. at 557–58, 84 S.Ct. at 918, stated that, while normally a court should not address procedural questions, in rare instances a court "could deny arbitration [ ] if it could confidently be said, not only that a claim was strictly 'procedural', . . . but also that it should operate to bar arbitration altogether." *Local 4–447* 815 F.2d at 341. The court held that because an arbitrator could find that Chevron had waived its rights to object to late service by its conduct, the district court had properly ordered Chevron to arbitration because the trial judge could not *confidently* say that the procedural claim would bar arbitration altogether. *Id.* at 342 (emphasis in original).

In light of these decisions, current Fifth Circuit law appears to be that timeliness questions are procedural issues for arbitral, not judicial, determination. *Austin Co.,* 784 F.2d at 1264. The only exception to this rule is that a court may decide procedural arbitrability questions if, and only if, the court can *confidently* say the claim would be barred. *Local 4–447* 815 F.2d at 340–41, *relying on John Wiley & Sons,* 376 U.S. at 557–58, 84 S.Ct. at 918. The court may not, however, consider the merits of the underlying dispute in deciding whether the claims are barred. *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418.

The situation in *Local 4–447* is analogous to the one before the Court. If proven before the AMEX arbitrators, Boone's allegations that SBS fraudulently concealed its wrongdoing could act to waive any objection SBS has to Boone filing his arbitration claims late, but the Fifth Circuit has made it clear that this is a question for the arbitrators. Additionally, because the Court may not consider the merits of Boone's claims, the Court

---

3. *E.g., PaineWebber, Inc. v. Hofmann,* 984 F.2d 1372 (3d Cir.1993); *Roney & Co. v. Kassab,* 981 F.2d 894 (6th Cir.1992); and *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir.1992).

4. NYSE R. 603 is identical to AMEX R. 605.

cannot confidently determine whether or not Boone's fraudulent concealment claims are valid, i.e. would toll or waive AMEX R. 605's six year limitation.

Therefore, because the Fifth Circuit considers timeliness questions to be procedural, not substantive, issues and because this Court cannot *confidently* say that SBS' procedural timeliness claim clearly bars Boone from proceeding, SBS' Complaint for Declaratory Relief is hereby **DENIED.**

As discussed *supra* SBS' Motion for Preliminary Injunction is also **DENIED.**

These rulings are made without reference or comment on the merits of the underlying dispute between Boone and SBS. The parties are free to pursue arbitration according to the Customer Agreement.

IT IS SO ORDERED.

### *JUDGMENT ON DECISION BY THE COURT*

This action came on for consideration by the Court, Honorable David O. Belew, Jr., District Judge, presiding, and the issues having been duly heard and considered and a decision having been rendered by Memorandum Opinion and Order entered this same day,

It is hereby ORDERED and ADJUDGED that Plaintiff Smith Barney Shearson's Complaint for Declaratory Judgment is DENIED. This action is hereby terminated and the Clerk of the Court is directed to close this case.

Each party shall pay their own costs of court.

IT IS SO ORDERED.