Rose V. BATSON, Plaintiff-Appellant,

v.

NEAL SPELCE ASSOCIATES, INC.,
Defendant-Appellee.

No. 86–1393

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1986.

Connie Ode, Bunton, Nolan, Ode & Cooper, Austin, Tex., for plaintiff-appellant.

Brook B. Brown, McGinnis, Lochridge & Kilgore, Austin, Tex., for defendant-appellee.

Before REAVLEY, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

In this appeal, we consider for the second time whether the district court abused its discretion in dismissing a civil rights plaintiff's complaint with prejudice and assessing over $30,000 in attorney's fees and costs. In the first appeal, we affirmed the district court's decision to impose sanctions, but remanded the case for consideration of whether some sanction short of dismissal would achieve the important deterrent value of Rule 37. We also remanded the case for a redetermination and assessment of attorney's fees and costs. *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511 (5th Cir.1985). On remand, the

district court entered extensive written findings of fact and conclusions of law. The district court again determined to dismiss the suit with prejudice[1] and award over $30,000 in attorney's fees and costs. Finding no abuse of discretion, we affirm.

## I.

The facts as reported in our earlier decision are as follows:

Rose V. Batson (Batson), the appellant, filed suit on March 8, 1983, in district court against her former employer, Neal Spelce Associates, Inc. (Spelce), alleging that her dismissal from employment was based upon sex discrimination in violation of Title VII of the Civil Rights Act of 1986, 42 U.S.C. § 2000e, *et seq.* Batson sought recovery of lost wages in the amount of $32,500 per year plus bonuses, benefits and attorney's fees. Spelce denied any unlawful discrimination and counterclaimed alleging that the suit was frivolous and had been brought solely for harassment purposes.

In preparation for trial, Spelce sought to depose Batson on April 12, 1983. Included in Spelce's deposition notice was a request, accompanied by a subpoena duces tecum, for the production of documents, most of which were intended to reveal Batson's income and financial activities in the years after her dismissal. Although Batson attended the deposition she did not produce all of the requested documents nor did she move for a protective order prior to the deposition. She assured Spelce, however, that the documents would be forthcoming. After the deposition, Spelce repeatedly made informal demands to Batson, most in the form of letters, seeking the financial records. In response to these demands Batson produced some of the documents and assured Spelce that others would be forthcoming in the near future.

All the documents were not produced, however, and Spelce, on February 27, 1984, noticed its intent to resume Batson's deposition on March 30. On March 9, Spelce served on Batson an amended notice of deposition; both the February 27 and March 9 notices were accompanied by subpoenaes requesting production of the same financial documents that had been requested in Batson's initial deposition, but had yet not been produced after some ten months.

Batson attended the deposition on March 30 as scheduled; but still she did not produce all of the requested financial documents and, for the first time, claimed that they were privileged. At the close of the deposition, Spelce noticed its intent to resume discovery on April 7, and again requested Batson's financial records. Batson then filed a motion to quash the document request, but the district court failed to rule on the motion prior to April 7. Batson attended the deposition but refused to produce the documents, hanging onto her claim of privilege.

On April 9, the district court overruled Batson's motion to quash and ordered her to produce all documents not yet produced. The court's order, however, did not specify a compliance date nor did it recite that sanctions would be imposed for failure to comply. Upon Batson's failure to comply upon request, Spelce, on April 12, filed a motion for sanctions. The same day Batson partially, but only partially, complied with the court's order. The trial was to begin April 18; but on April 18, before the trial commenced, the district court conducted a hearing on Spelce's motion for sanctions and did the court ever "sanctify" Ms. Batson: it dismissed her complaint with prejudice, and awarded Spelce $30,950.93 in attorney's fees and costs.

The court found that Batson's failure to produce was not because of her inability to produce. Furthermore, it found that the nonproduction severely preju-

1. The court actually determined that Batson would be precluded from presenting any evidence regarding lost wages. The court recognized, however, that this sanction was tantamount to dismissal with prejudice.

diced Spelce's ability to prepare its case. The court held that the dismissal of Batson's claim was authorized by Fed.R. Civ.P. 37(b) and (d) because of Batson's recalcitrance or gross neglect in complying with proper discovery requests, including a violation of the court's April 9 order and its previous order that discovery be completed by December 1, 1983. The court awarded the attorney's fees, deposition costs and witness fees in connection with the following items of the litigation: the second and third depositions of Batson' the deposition of Batson's husband; the defense of Batson's motion to quash the deposition of Batson's psychiatrist; the April 7 deposition of Batson; and the preparation and argument of Spelce's motion for sanctions. The award of attorney's fees and costs was based on Fed.R.Civ.P. 37 and 26, 28 U.S.C. § 1927 and decisions of the United States Supreme Court.

*Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 513–14 (5th Cir.1985).

In Batson's first appeal, the panel affirmed the district court's decision to impose sanctions. With regard to the district court's choice of the "ultimate sanction of dismissal," however, the panel noted

an absence in the record of any consideration by the district court of whether a less drastic sanction would have equally furthered the important deterrent aspect of Rule 37. Without explicit findings on this critical element, it is difficult to determine whether the court was within its discretion by choosing the ultimate sanction of dismissal. We do not enumerate or suggest other alternatives, but simply note that as far as the record demonstrates, no sanctions less than dismissal were even considered. It is appropriate to caution here that the conduct of litigants such as Batson will not be condoned and district courts should be free to fashion any sanction appropriate to punish recalcitrant parties and to deter those similarly situated. The district court, upon remand, may very well consider other sanctions and articulate valid reasons why such would not suffice;

thus, our remand might appear superfluous. Because we must remand to the district court on other grounds, however, judicial economy will not be disserved by our remanding for such articulation in this instance.

*Id.* at 516 (footnote omitted). With regard to the district court's assessment of over $30,000 in attorney's fees and costs, the panel noted that

The plain language of Rule 37, however, provides that only those expenses, including fees, caused by the failure to comply may be assessed against the noncomplying party. Furthermore, the expenses must be reasonable. Here the district court assessed attorney's fees under Rule 37 for discovery matters that were not related to Batson's failure to comply with the court's order. In addition, the extraordinarily large assessment of expenses in this case appears to be unreasonable on its face.

*Id.* at 516. The panel thus determined that it was necessary to remand for a redetermination of attorney's fees and costs.

In examining the amount of attorney's fees awarded by the district court, the panel noted the district court's reference to the American common-law rule that a defendant may obtain attorney's fees when a plaintiff has acted in bad faith. The panel concluded, however, that

Although Batson's failure to comply with the discovery order may have been in bad faith, there has been no finding that the action was brought in bad faith or that Batson acted in bad faith as to matters other than her failure to comply with the discovery order. Thus, under the findings in this case, the general common-law rule will not support an award of attorney's fees other than those related to Batson's failure to comply with discovery.

*Id.* at 516–17 n. 3.

## II.

■ On remand, and pursuant to this Court's instructions, the district court ex-

pressly considered alternative sanctions and found that only dismissal of Batson's complaint sufficed to serve the punitive and deterrent functions of Rule 37. We conclude that this finding was not clearly erroneous. Thus, the district court's decision to dismiss Batson's claim with prejudice was not an abuse of discretion.

Batson contends that the sanction of dismissal was inappropriate given Batson's "tender" following remand of all previously withheld discovery material. Our review of the record, however, reveals that Batson's tender was no more than a promise to produce the documents. Based on Batson's prior record of nonproduction, the district court could properly conclude that this latest promise provided "no assurance Plaintiff will comply with Court ordered discovery even if given additional opportunities." Moreover, the district court was not required to consider offers to produce made only after it had ordered dismissal of Batson's claim. Such a requirement could undermine the integrity of the district court's orders. The time to comply with the district court's discovery order was before rather than after the suit was dismissed.

### III.

On remand, the district court was also required to reconsider its original assessment of over $30,000 in attorney's fees and costs. The district court found that Batson had acted in bad faith in its conduct of the litigation and again awarded in excess of $30,000 in attorneys' fees. Batson challenges this award on appeal.

■ The "American rule" ordinarily requires parties to shoulder their own counsel fees and other litigation expenses absent statutory or contractual authority for an alternative allocation. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Nevertheless, federal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *F.D.*

*Rich Co. v. United States ex rel. Industrial Lumber*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). In this class of cases, the underlying rationale of "fee shifting" is punitive. The essential element in triggering the award of fees is therefore the existence of "bad faith" on the part of the unsuccessful litigant. *Hall v. Cole*, 412 U.S. 1, 6, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973).

■ The standards for bad faith are necessarily stringent. *See Roadway Express Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) ("Because inherent powers [to levy attorneys' fees for bad faith] are shielded from direct democratic controls, they must be exercised with restraint and discretion."). A party should not be penalized for maintaining an aggressive litigation posture. "But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C.Cir.1980).

■ When the request for fees is made by a successful defendant, the bad faith, vexation, wantonness, or oppression often relates to filing and maintaining the action. 6 J. Moore, W. Taggert, and J. Wicker, Moore's Federal Practice ¶ 54.78[3] (1986). Courts may also award fees, however, as a sanction for bad faith in the conduct of the litigation resulting in an abuse of judicial process. Thus, while the presence of merit in a claim or defense may negate any finding of bad faith in its filing, it cannot justify abuse of the judicial process in the method of prosecution. *See Lipsig*, 663 F.2d at 182.

■ In the instant case, the district court made extensive findings of fact in determining that Batson had acted in bad faith during the course of litigation. The district court found that Batson's "failure to produce evidence as to her post termination income was willful and the result of a conscious effort[ ] to hinder [Spelce's] discovery as to the legitimacy of her claim of

damages." The district court also found that Batson's conduct "was willful and made in bad faith." Specifically, the district court found that Batson engaged in dilatory tactics during discovery, refused to cooperate during depositions, misused her claim of privilege, misled Spelce on several occasions regarding her willingness to produce financial records and the extent of her post termination income, and acted in bad faith in refusing to respond to court ordered discovery. While Batson urges a different view of her conduct, we cannot say that the district court's finding of bad faith was clearly erroneous, or that the court abused its discretion in holding that Batson's conduct called for an award of compensatory attorney's fees.

Contrary to Batson's argument on appeal, the district court did not bootstrap a finding of bad faith in discovery into a finding of bad faith in all other aspects of the case. The district court did not find bad faith as to the whole of plaintiff's claim. Nor was it required to do so in order to award attorney's fees. Rather, the district court found that Batson's conduct created a presumption that her *damage* claim was unfounded. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351, 29 S.Ct. 370, 380, 53 L.Ed. 530 (1909).

The original panel in this case noted that the withheld documents "were absolutely necessary to defend against [Batson's] demand for damages." *Batson v. Neal Spelce Assoc., Inc.*, 765 F.2d 511, 515 (5th Cir.1985). On remand, the district court found that Batson's "failure to provide the requested documents at the initial deposition and her subsequent repeated, but sham, promises to provide the discovery, wholly precluded Defendant from assessing its risk in this case, assessing settlement and/or summary judgment potential on the grounds Plaintiff had incurred no damage." Based on this conclusion, the district court found that "an award of fees from and after the date the information should have been produced is appropriate." Citing Spelce's affidavit, the court awarded $30,120.50 in attorney's fees.[2]

■ Batson contends that the amount of fees awarded on remand was unjustified. Batson argues that under Rule 37, the district court was permitted to award only *reasonable* expenses including attorney's fees *caused* by the failure to comply with its discovery order. According to Batson, only $3,316.30 in fees resulted from her noncompliance. Batson's argument erroneously assumes, however, that the district court's award was pursuant to Rule 37. In fact, the district court's award was pursuant to its inherent powers upon a finding of bad faith *independent of any statutory authorization*.[3]

■ Batson also argues that a full hearing on the merits of her damages claim was required before the district court could conclude that the claim was unfounded. However, it was Batson's conduct that precluded a full hearing on the merits of that claim. Given the presumption arising from Batson's failure to produce as well as evidence contained in the record the district court could properly find that

> Had Defendant been able to discover in a timely manner the true nature of Plaintiff's post-termination income, it would have chosen to limit its defense to an attack on the damage claim, perhaps presented summary judgment on the damage claim or otherwise tailored its defense to the dollar amount at risk.

Thus, this finding was not clearly erroneous.

## IV. CONCLUSION

Batson's remaining arguments are equally without merit. The judgment of the district court is

AFFIRMED.

---

**2.** Spelce points out that contrary to the assertion in Batson's brief, the district court did not award Spelce all of its attorneys' fees. Spelce claims that its total amount paid in attorneys' fees was in excess of $40,000.

**3.** Thus, our holding in this case in no way contradicts the prior panel's Rule 37 conclusion.