897 F.2d 768
 134 L.R.R.M. (BNA) 2084, 114 Lab.Cas. P 12,052
 DISTRICT 37 OF the INTERNATIONAL ASSOCIATION OF MACHINIST &
AEROSPACE WORKERS, and its Local Lodge No. 1786,
Plaintiffs-Appellants,
v.
LOCKHEED ENGINEERING & MANAGEMENT SERVICES COMPANY, INC.,
Defendant-Appellee.
 No. 89-2533.
 United States Court of Appeals,
Fifth Circuit.
 April 3, 1990.
 
 Bruce Fickman, Fickman, Van Os, P.C., Houston, Tex., for plaintiffs-appellants.
 Jeffrey C. Londa, Hutcheson & Grundy, Houston, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before CLARK, Chief Judge, and POLITZ and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 Appellants, District 37 of the International Association of Machinists & Aerospace Workers and its Local Lodge No. 1786 (collectively "the Union"), and appellee, Lockheed Engineering & Management Services Company, Inc. ("LEMSCO"), entered into a collective bargaining agreement on August 27, 1983, on behalf of the employees of the NASA/Johnson Space Center Engineering and Science Program at Ellington Air Force Base in Texas. In August 1986, Rosalie Powell, a bargaining unit employee and union steward, filed a grievance against LEMSCO. In the grievance, she claimed that the company violated Article 1, section 11, of the collective bargaining agreement[1] when it laid off its hourly bargaining unit illustrators while hiring salaried personnel to perform illustration "work normally performed by employees in the bargaining unit".[2]
 
 
 2
 The Union sought arbitration of this dispute under the agreement's grievance procedures.[3] 3] LEMSCO refused to proceed with arbitration, however, asserting that the collective bargaining agreement only covers "program" work and hence does not provide for arbitration of disputes concerning "proposal" work.[4] It also claimed that the resolution of two previous grievances on the same subject matter barred the subject grievance.
 
 
 3
 Upon LEMSCO's refusal to proceed to arbitration, the Union filed suit, pursuant to 29 U.S.C. Sec. 185(a), in federal district court seeking judicial enforcement of the arbitration clause. In the district court, LEMSCO filed a motion for summary judgment. The Union filed a cross-motion for partial summary judgment, reserving the issue of attorney's fees in the event it prevailed. The district court granted summary judgment in favor of LEMSCO, finding that the collective bargaining agreement, including the grievance/arbitration clause, does not address or cover proposal work, and that LEMSCO therefore had no duty to arbitrate a grievance regarding the assignment of proposal work.
 
 
 4
 The Union appeals and requests this Court to reverse and render on the issue of arbitrability, and reverse and remand on the issue of attorney's fees.
 
 I.
 
 5
 Our central task in this appeal is to determine whether the Union asserted the type of grievance that is subject to the arbitration clause in the collective bargaining agreement--the "arbitrability" of the grievance. In the landmark Steelworker Trilogy cases--USWA v. American Manufacturing, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); USWA v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and USWA v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)--the Supreme Court established four fundamental principles that control and guide our inquiry.
 
 
 6
 The first principle is that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting Warrior & Gulf Navigation Co., 363 U.S. at 582, 80 S.Ct. at 1352); see also International Assn. of Machinists & Aerospace Workers, AFL-CIO Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 221 (5th Cir.1987). The second principle is that the arbitrability of a grievance is an issue for judicial determination. AT & T v. CWA, supra, 475 U.S. at 649, 106 S.Ct. at 1418. Third, in deciding the arbitrability issue, a court is not to rule on the merits of the grievance. Id. at 649-50, 106 S.Ct. at 1419. Fourth, the existence of an arbitration clause in the collective bargaining agreement raises a presumption of arbitrability. Id. at 650, 106 S.Ct. at 1419.
 
 
 7
 The contract between LEMSCO and the Union contains an express provision that any unsettled grievance which involves the interpretation or application of the agreement may be submitted to arbitration. Under the fourth principle, this provision raises a presumption of arbitrability. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." USWA v. Warrior & Gulf Navigation Company, supra, 363 U.S. at 582-83, 80 S.Ct. at 1353. "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail ..." Id. at 584-85, 80 S.Ct. at 1354.
 
 
 8
 The subject agreement does not contain any express language limiting the arbitration clause or excluding grievances claiming a violation of Article 1, Section 11 of the agreement from the operation of the arbitration clause. We also fail to find any "forceful evidence" in the record that the parties to the agreement intended to exclude such claims from arbitration.
 
 
 9
 Appellee urges, as the district court concluded, that by its express terms the entire collective bargaining agreement covers only program work and thus excludes proposal work. Therefore, LEMSCO cannot have a duty under the agreement to arbitrate a grievance that concerns proposal work. Alternatively, it asserts that the history of the agreement yields sufficiently "forceful evidence" of an intent to exclude grievances concerning proposal work to rebut the presumption of arbitrability.
 
 
 10
 Appellee, however, fails to understand the limited scope of our inquiry. We cannot look to the merits of the underlying grievance to determine its arbitrability. Admittedly, we look to the terms of the contractual agreement to determine whether the parties intended to subject a particular dispute to arbitration. Contrary to the assertions of LEMSCO, however, we must conclude that the arbitration clause clearly is reasonably interpreted to include grievances claiming that proposal work is covered by the contract if it is "work normally performed by employees in the bargaining unit" within the meaning of Article 1, Section 11, of the agreement.
 
 
 11
 Appellee relies on the definition of "the Company" in the preamble to the agreement, and on the supporting affidavit of Arthur Lemke, LEMSCO's Deputy Manager of Human Resources, as forceful and conclusive evidence of the parties' intent to exclude proposal work from the operation of the agreement as a whole and the arbitration clause in particular. LEMSCO also points to two previous grievance settlements as additional evidence that the parties did not intend to arbitrate grievances concerning proposal work. We find, however, that the evidence is not persuasive. First, the preamble merely identifies the parties who are to benefit by and perform under the contract. It defines "the Company" as the NASA/Johnson Space Center Engineering and Science Program at Ellington Air Force Base where, they claim, the program work is done, while the proposal work is done at LEMSCO headquarters in Houston. The preamble, however, does not identify, describe, or limit the type of work covered by the agreement or to be performed by the employees of that part of LEMSCO which operates the Program.[5] It provides no substantive evidence that the parties intended to exclude from arbitration appellant's grievance claim if the proposal work was "work normally performed by employees of the bargaining unit". That is the key issue. If the company can prove that the work was not "normally performed" by bargaining unit employees, the work is, in terms, not covered.
 
 
 12
 Second, Lemke's testimony in the affidavit contains conclusory statements that the bargaining history evidences the parties' clear intent to remove grievances concerning proposal work from the arbitration clause. He offers no substantive evidence, however, to support this statement other than his assertion that bargaining unit employees never performed proposal work and that it was always done at LEMSCO headquarters in Houston, Texas. The Union counters this testimony with statements in affidavits of Union representatives asserting that, in the past, bargaining unit employees have done proposal work, and that during negotiations LEMSCO had committed orally to continue sending proposal work to bargaining unit employees. In essence, Lemke's statement is testimony on the merits of appellant's grievance, and is for the arbitrator to evaluate.
 
 
 13
 Third, LEMSCO claims that the previous grievance settlements show that the parties intended to exclude disputes regarding proposal work from the operation of the arbitration clause. In 1982, LEMSCO and Union settled two grievances that arose when a bargaining unit employee was laid off and then hired at LEMSCO headquarters in Houston to do proposal illustration work similar to the work she previously performed while working in the bargaining unit. The Union filed the grievances. In the settlement agreement, LEMSCO agreed to restore a downgraded employee to her former classification and pay while doing the same work. LEMSCO also reaffirmed its commitment to "encourage" corporate headquarters to subcontract as much work as possible to the bargaining unit illustrators. Additionally, the parties reaffirmed the "distinct and definite separation of Lockheed-EMSCO Corporate Headquarters and its operation from the JSC-ESPO Program."
 
 
 14
 LEMSCO claims that the settlement in general, and the recognition of the separation of headquarters and the Program in particular, further evidences the parties' intent to remove grievances concerning proposal work from arbitration. This is essentially the same argument that LEMSCO made with respect to the preamble. Once again it urges the settlement identifies "the Company" for which the bargaining unit works to be the Program and not corporate headquarters. But the Union nonetheless has a cognizable grievance that "the Company" may have violated the agreement when LEMSCO laid off Powell while hiring a salaried employee to do "work normally performed" by the bargaining unit. Whether the prior grievance settlements support LEMSCO's proposition that proposal work is not covered by the agreement is also a question for the arbitrator to consider in deciding the merits of the Union's grievance.
 
 
 15
 We find support for our conclusion in our holding in OCAW Local 4-447 v. Chevron Chemical Co., 815 F.2d 338 (5th Cir.1987). In Chevron, the company sought to avoid arbitration of a grievance that claimed the company failed to fill a temporary technician position in accordance with the seniority provisions of the collective bargaining agreement. Similar to LEMSCO's argument in this case, Chevron argued that the agreement did not cover the work at issue. The panel stated:
 
 
 16
 This Court finds that Chevron's argument is not persuasive. Local 4-447's claim does constitute a "grievance" since it asserts that Chevron failed to comply with a provision in the collective bargaining agreement--Article III, section 6. In addition, it is appropriate for this grievance to go to arbitration, since it involves the "application and interpretation" of several provisions in the collective bargaining agreement. Whether the position of temporary technician is covered by the collective bargaining agreement involves an interpretation of Article I, Section 1, and Article III, Section 1. The contract reserves such a determination for the arbitrator. If the position of temporary technician is not covered by the collective bargaining agreement, then Local 4-447's claim that Chevron violated Article III, Section 6 by not hiring employees according to the seniority preference provisions is without merit, but this determination is for an arbitrator since the parties agreed to arbitrate the claim which Local 4-447 asserts.
 
 
 17
 Chevron, supra, 815 F.2d at 344.
 
 
 18
 The parties have agreed in the contract that what constitutes bargaining unit work is an issue on the merits for an arbitrator. It is not for this Court to decide.
 
 II.
 
 19
 Finally, in the alternative, LEMSCO urges that because of a separate finality provision in the contract, the earlier grievances mentioned above act as a bar to the submission of this grievance. Article V, Section 4, provides that the decisions of the Labor Relations Committee regarding the settlement of grievances "shall be considered as final". No one disputes that the settlements of those grievances are final, for purposes of those grievances. Appellee offers absolutely no authority either in case law or in the express terms of the contract, however, for the strained proposition that a settlement in a previous grievance that involved similar subject matter but arose out of a separate set of operative facts has the effect of removing the present grievance from the operation of the arbitration clause. The prior settlements, if on identical facts, might have a final and binding effect on the present grievance. But that raises a substantive issue on the merits of the Union's grievance requiring interpretation and application of the provisions of the agreement. Cf. W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 765, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983).
 
 III.
 
 20
 We hold, therefore, that the Union's grievance claiming that LEMSCO violated a specific section of the collective bargaining agreement when it hired salaried employees to perform work allegedly "normally performed" by bargaining unit employees is subject to arbitration. The district court erred in granting summary judgment to LEMSCO and denying the Union's motion for partial summary judgment. We reverse and order arbitration of the Union's grievance. We leave undisturbed the district court's decision concerning attorney's fees, as the granting of attorney's fees is a discretionary matter.
 
 
 21
 REVERSED; ORDER ARBITRATION.
 
 
 
 [1]
 The agreement provides in relevant part:
 Article 1
 Section 11--Salaried Employees Performing Bargaining Unit Work
 A. Salaried personnel shall not perform work normally performed by employees in the bargaining unit.... [with several exceptions, none of which are applicable in this case]....
 The Company will use its best efforts to ensure that the terms of this provision are understood and applied throughout the Company in keeping with the intent herein.
 
 
 [2]
 In a separate grievance, Powell also challenged her lay-off alleging anti-union discrimination. This grievance was denied, and Powell and the Union did not take it to arbitration
 
 
 [3]
 The collective bargaining agreement reads in relevant part:
 Article V
 Grievance Procedure
 Section 1--Definition and Representation
 The term "grievance", as it is used throughout this Agreement (except for the term "union grievance" in section 3 of this Article) shall mean a written claim by an employee that the Company has violated a specific provision of this Agreement by action, or failure to take action which, at the time such written claim is filed, denies to such employee a right given to employee under such specific provisions of this Agreement. Such written claim shall state the specific provision(s) of this Agreement claimed to have been so violated....
 Section 5--Arbitration
 A. Any grievance which has not been settled pursuant to Sections 2, 3, and 4 of this Article and which involves the interpretation or application of this Agreement may be referred to arbitration.
 
 
 [4]
 "Proposal work" refers to that work performed on behalf of LEMSCO in order to bid and obtain government contracts. "Program work" generally is work performed after a government contract has been obtained. In this case, "program work" refers to work done for the NASA/Johnson Space Center Engineering and Science Program
 
 
 [5]
 The preamble reads:
 THIS AGREEMENT, entered into by and between Lockheed Corporation, a California Corporation, acting for the unit of its wholly owned subsidiary, Lockheed Engineering and Management Services Company, Inc. (Lockheed-EMSCO), known as the NASA/Johnson Space Center Engineering and Science Program (the term "Company" as used throughout this Agreement refers only to said NASA/Johnson Space Center Engineering and Science Program at its facilities now or hereafter, during the term of this Agreement, located at the Lyndon B. Johnson Space Center, Ellington Air Force Base, Clear Lake City and Nassau Bay in the State of Texas), and District Lodge No. 37 of the International Association of Machinists and Aerospace Workers, (hereinafter called the "Union"), evidences the desire of the Company and the Union to promote and maintain harmonious relations between the Company, its employees, as such employees are hereinafter defined, and the Union as their Representative.