**SABINE INDEPENDENT SEAGOING OFFICERS ASSOCIATION**

v.

**SABINE TOWING AND TRANSPORTATION COMPANY.**

**No. 1:92–CV–161.**

United States District Court, E.D. Texas, Beaumont Division.

Oct. 14, 1992.

---

Juliann H. Faustini, Davis & Shank, Houston, Tex., for plaintiff.

John H. Smither, J. Alfred Southerland, Vinson & Elkins, Houston, Tex., for defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT**

SCHELL, District Judge.

CAME ON TO BE CONSIDERED Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment. The court, after reviewing the motions, responses in opposition, pleadings

of record, and all attached affidavits and exhibits is of the opinion that Plaintiff's Motion for Summary Judgment should be GRANTED IN PART and that Defendant's Cross–Motion for Summary Judgment should be GRANTED IN PART. All other pending motions before the court are DENIED.

## I. BACKGROUND

The Sabine Independent Seagoing Officers Association (the "Union") and the Sabine Towing & Transportation Company (the "Company") entered into a written collective bargaining agreement on February 9, 1990. The collective bargaining agreement (the "Agreement") became effective on March 1, 1990 for a period of four years and covers employees working aboard vessels owned and operated by the Company. Article XIX of the Agreement provides that arbitration is to be the sole and exclusive means of resolving unsettled disputes between the Union and the Company "with respect to the interpretation, application, or alleged violation of any provision or provisions of this agreement." [1]

On March 13, 1992, the Company sold all of its assets to a newly formed subsidiary of the Kirby Corporation ("Kirby"). This sale of assets to Kirby ended the employment of the Union members with the Company. In the month prior to the sale, the Company and the Union engaged in negotiations regarding the termination of certain Union benefits under the Agreement. During these negotiations, the Union specifically raised the following issues it believed to be covered by the Agreement:

1. Layoff/severance pay to employees;

2. Refund of medical insurance premiums paid by employees to the Company; and

3. Maintenance of medical and dental benefits for retirees.

After receiving notice of the sale of assets to Kirby, the Union attempted to file grievances concerning these issues pursuant to the grievance procedure outlined in Article XIX of the Agreement. The Company rejected the grievances on the basis that the disputed issues were not arbitrable because they were outside the scope of the Agreement and/or because the Union filed the grievances in an untimely manner. Whether or not the Union filed its grievances in a timely manner pursuant to the Agreement is a hotly contested factual issue.

The Union has continued to seek arbitration under the grievance procedure set out in Article XIX of the Agreement. The Company refuses to arbitrate the disputed issues. On April 22, 1992, the Union filed a complaint in this court, pursuant to 29 U.S.C. § 185(a), seeking an order to compel arbitration of the three disputed issues. The Company's answer states that the Union's grievances are not arbitrable because:

1. The claim concerning the maintenance of medical and dental benefits for retirees is preempted by ERISA, or in the alternative it is beyond the scope of the Agreement, or in the alternative it is not arbitrable because its filing was untimely;

2. The claim for a refund of the medical insurance premiums is preempted by ERISA, or in the alternative it is beyond the scope of the Agreement, or in the alternative it is not arbitrable because its filing was untimely; and

3. The claim for layoff/severance pay is not arbitrable because its filing was untimely.

The Company has cross-moved for summary judgment seeking an order from the court declaring that none of the three disputed issues are subject to arbitration. The Union has dropped the medical and dental care claim for retirees and moved for summary judgment compelling the par-

---

1. Article XIX, Section 1 of the Agreement provides:

 A grievance is defined as any difference of opinion, or dispute between the Company and the Union, or between the Company and any employee, with respect to the interpretation, application, or alleged violation of any provision or provisions of this Agreement. It is understood that every reasonable effort shall be made to settle the grievance in accordance with this Article.

ties to engage in arbitration of the two remaining claims as required by the Agreement.

The Company contends that the maintenance of medical and dental benefits for retired employees is not arbitrable under the Agreement because such a claim is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq., (ERISA). Although the Union disagrees, the Union has nevertheless abandoned this claim in its Motion for Summary Judgment, stating on page 2 that since the retired employees are not part of the bargaining unit, they cannot assert their rights through the Union. Accordingly, the court finds that the claim concerning the retired employees' benefits is not arbitrable and GRANTS the Company's Cross–Motion for Summary Judgment on that issue. The court must now determine if the two remaining disputed issues must be arbitrated.

## II. SCOPE OF INQUIRY

The district court's scope of inquiry in an action brought under 29 U.S.C. § 185(a) is very limited. *District 37 of Int'l Ass'n of Machinist & Aerospace Workers v. Lockheed Eng'g & Management Servs. Co.*, 897 F.2d 768, 771 (5th Cir.1990). The court's only duty is to determine whether a party has asserted grievances that are subject to the arbitration clause found in the particular collective bargaining agreement. *Id.* at 770. In the *Steelworkers Trilogy* cases, *USWA v. American Mfg.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *USWA v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *USWA v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Supreme Court established the four fundamental principles that control this inquiry. Restated by the Court in *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), these principles are: first, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agree to submit, *Id.* at 648, 106 S.Ct. at 1418; second, the arbitrability of a grievance is an issue for judicial determination, *Id.* at 649, 106 S.Ct. at 1418; third, in deciding the arbitrability issue, the court is not to rule on the merits of the grievance, *Id.* at 649–50, 106 S.Ct. at 1419; and fourth, the existence of an arbitration clause in a collective bargaining agreement raises a presumption of arbitrability, *Id.* at 650, 106 S.Ct. at 1419.

The Supreme Court distinguishes between the court's roles in determining questions of substantive and procedural arbitrability. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). If the court determines that the subject matter of a dispute is subject to arbitration—that it is substantively arbitrable—the procedural questions growing out of the dispute and bearing on its final disposition are left to the arbitrator. *Id.* at 557, 84 S.Ct. at 918. The Fifth Circuit rule is that timely compliance with grievance procedures present questions of procedural, not substantive, arbitrability. *Oil, Chemical and Atomic Workers' Int'l Union, Local 4–447 v. Chevron Chem. Co.*, 815 F.2d 338, 341 (5th Cir.1987).

In ruling on this application to compel arbitration, the court must decide whether: (1) there is an agreement to arbitrate grievances, (2) there are substantively arbitrable grievances, and (3) there are any valid procedural or other defenses that bar the arbitration of any arbitrable grievances.

## III. AGREEMENT TO ARBITRATE

The Agreement entered into between the Company and the Union on February 2, 1990 contains a grievance procedure in Article XIX that calls for arbitration in the event that disputes cannot be settled. Neither the Company nor the Union contend that the arbitration clause is not valid. The court finds that the Agreement between the Company and the Union contains an agreement to arbitrate grievances.

## IV. SCOPE OF THE AGREEMENT

### A. Insurance Premiums Dispute

■ Under Article XX of the Agreement, the Union and the Company agreed to continue in force the pension, life insurance and medical benefits plans, and agreed to jointly establish the rate of contributions made by employees to the Company to help the Company pay medical insurance premiums for the benefit of the employees. By Letter of Agreement ("Letter") executed contemporaneously with the Agreement, the Company and the Union agreed that employee contributions would be 25% of the total premium cost to the Company.[2] The employees paid these premiums to the Company until the time of the sale to Kirby. The Union maintains that the employees are entitled to a refund of the insurance premiums they have paid and seeks to arbitrate the issue. The Company contends that, because the Agreement and Letter do not discuss refunds of insurance premiums to the Union, this dispute is outside the scope of the Agreement and not subject to arbitration.

The Company, citing the *Steelworkers Trilogy*, argues that the parties cannot be required to submit to arbitration any dispute which they have not agreed to submit. *AT & T*, 475 U.S. at 648, 106 S.Ct. at 1418. The Company believes that, because 'refunds' of insurance premiums are not dealt with or mentioned in the Agreement or the Letter, the parties have not agreed to arbitrate a dispute over a claim for 'refunds.' The Union, on the other hand, points to the fact that the Agreement and the Letter do mention and deal with insurance premium contributions. The Union further points out that the language in Article XIX of the Agreement provides: "A grievance is defined as any difference of opinion, or dispute, . . . . . with respect to the interpretation, application, or alleged violation of any provision. . . ." Therefore, the Union contends that this language is broad enough to cover any dispute concerning insurance premium contributions by employees, including refunds.

This court must first determine whether the refund of insurance premiums is substantively arbitrable. As the Fifth Circuit stated in Lockheed, "Admittedly, we look to the terms of the contractual agreement to determine whether the parties intended to subject a particular dispute to arbitration." 897 F.2d at 771. In the case now before the court, neither the Agreement nor the Letter amendment directly discuss or even allude to the refund of any insurance premiums. These agreements discuss only the employee rate of contribution and the percentage of the premium cost to be paid by the employee. The court agrees with the Company that the asserted grievance over the right to a refund of insurance premiums goes beyond ". . . the interpretation, application, or alleged violation of any provision or provisions of this Agreement." The discussion in the Agreement and the Letter about premium contributions and premium percentages neither explicitly nor implicitly implicates the right to a refund of those premiums.

The court is mindful of the fourth principle of the *Steelworkers Trilogy* cases, that the existence of an arbitration clause in the collective bargaining agreement raises a presumption of arbitrability. However, the first and second principles are that a party cannot be required to arbitrate a dispute which he has not agreed to arbitrate, and the court must determine whether the parties agreed to arbitrate a particular grievance. While it may be said that the parties here have agreed to arbitrate a grievance over the rate or percentage of premium contributions, the same cannot be said of the refund of premiums paid.

Because the premium refund grievance is outside the scope of the Agreement itself, and therefore outside the scope of the arbitration clause in Article XIX, the Union's Motion for Summary Judgment is DENIED and the Company's Cross–Motion for

---

**2.** Paragraph 5 of the Letter of Agreement provides in part:

Effective April 1, 1990, medical insurance premiums shall be set by the Company and the [Union] at a ratio of 75/25% of total premium, with employees covered hereunder responsible for the payment of 25%.

Summary Judgment is GRANTED on this issue.

## B. Layoff/Severance Pay Dispute

The Company does not dispute that the layoff/severance pay grievance, arising from the language of Article VI Section 3 of the Agreement, is substantively arbitrable. This dispute clearly concerns "the interpretation, application, or alleged violation of any provision or provisions of the Agreement" and is subject to arbitration.

## V. VALID DEFENSES TO ARBITRATION

 The Company argues that, notwithstanding the substantive arbitrability of the layoff/severance pay grievance, the Union's alleged failure to timely file this grievance under the Agreement bars arbitration. However, the Fifth Circuit, citing *John Wiley*, has held that when a particular claim is found to be arbitrable, all associated procedural questions that have a bearing on the final disposition of the claim should be decided by the arbitrator. *Chevron*, 815 F.2d at 340. "Questions of timeliness are ones of procedural, not substantive, arbitrability. (citations omitted) As such, *John Wiley* instructs that the question of timeliness should be decided by an arbitrator if the underlying substantive claim is arbitrable." *Chevron*, 815 F.2d at 341.

The Company, however, relies on an exception established by the Supreme Court in *John Wiley* for the proposition that the layoff/severance pay dispute is one of those 'rare' situations where a court can decide an issue of procedural arbitrability such as timeliness of grievances. *John Wiley*, 376 U.S. at 557–558, 84 S.Ct. at 918. In order for one of the 'rare' situations to exist, the court must find that not only is the claim strictly procedural, but that it will also operate to bar arbitration altogether. *Id.*

In *Chevron*, the Fifth Circuit adopted the test used by the Second Circuit to determine if one of these 'rare' situations exists. *Chevron*, 815 F.2d at 341–42. The Fifth Circuit, citing *Rochester Telephone Corp.* *v. Com. Workers of America*, 340 F.2d 237 (2d Cir.1965), determined that a court will order arbitration unless "no rational mind" could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement is clear. *Chevron*, 815 F.2d at 342.

The Company argues that the contractual language of the Agreement indicates that the parties intended to bar arbitration if the grievance procedure was not strictly followed. The Company cites the language found in Article XIX Section 2 of the grievance procedure to support this argument. Section 2 provides:

It is agreed that the time limitations hereinafter set forth for the various steps in the handling of grievances shall be adhered to strictly. In the event that a time limitation is exceeded by the Union, the matter shall be deemed resolved in favor of the Company and when a time limit is exceeded by the Company, the matter shall be deemed resolved in favor of the Union....

This language clearly contemplates favoring one party over the other party who violates the time limitations. But nowhere does the wording of the Agreement bar arbitration of any particular grievance. The Sixth Circuit case the Company cites to support this interpretation of the Agreement concerned a collective bargaining agreement which specifically read, "No grievance shall be arbitrable...." unless the grievance procedures were followed. *General Drivers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871, 873 (6th Cir.1988). While the language in this Agreement is strong regarding the consequences of failing to meet time limitations for the filing of grievances, it does not preclude or bar arbitration as the agreement did in *Moog*. Further, based on the facts of this case, an arbitrator could find that the Union met the procedural requirements in the Agreement. The *Chevron* Court, citing the *Steelworkers Trilogy*, held that when there are doubts as to whether an issue is arbitrable, they should be resolved in favor of arbitration. *Chev-*

*ron,* 815 F.2d at 343. Without expressing an opinion as to the merits of either party's disputed factual claims, the court finds that the layoff/severance pay grievance and the timeliness of the Union's filing of this grievance are matters for an arbitrator to decide. Accordingly, the Union's Motion for Summary Judgment is GRANTED and the Company's Cross–Motion for Summary Judgment is DENIED on this issue.

## VI. ATTORNEYS' FEES

■ The Union contends that it is entitled to an award of attorneys' fees because the issues of layoff/severance pay and medical insurance premiums are expressly mentioned in the Agreement and consequently clearly subject to arbitration. The Union argues that the refusal by the Company to arbitrate these issues is vexatious because there is no legitimate or articulated reason for refusing to arbitrate the disputed issues.

The "American rule" requires parties to shoulder their own attorneys' fees and other litigation expenses absent statutory or contractual authority for an alternative allocation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *Accord Batson v. Neal Spelce Associates, Inc.,* 805 F.2d 546, 550 (5th Cir.1986). Title 29 U.S.C. § 185 does not provide for the payment of attorneys' fees. However, in *Hall v. Cole,* 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973), the Supreme Court established that an award of attorneys' fees may be made to a successful party even in the absence of statutory or contractual authority when an opponent has acted in bad faith. The Fifth Circuit has determined that the focus of this bad faith inquiry is not the actions precipitating the law suit, but the manner in which the litigation itself is conducted. *Batson,* 805 F.2d at 550; *See Guidry v. International Union of Operating Engineers, Local 406,* 882 F.2d 929, 944 (5th Cir.1989), *vacated on other grounds,* 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603, *on remand,* 907 F.2d 1491 (5th Cir.) *cert. denied,* —— U.S. ——, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990). However, a party should not be penalized for maintaining an aggressive litigation posture when its actions are not intended to burden the opponent with unnecessary expenditures of time and effort. *Batson,* 805 F.2d at 550.

The Union has failed to produce any evidence that the Company has carried out this litigation in a vexatious manner or in bad faith. The only evidence the Union points to in support of these allegations is the language of the Agreement. This court has found, however, that the language of the Agreement does not support the substantive arbitrability of the dispute over the refund of medical insurance premiums. The court further finds that the Company's positions are neither vexatious nor asserted in bad faith. The Company should not be penalized for adopting an aggressive litigation posture that is not vexatious or asserted in bad faith.

IT IS, therefore, ORDERED that Plaintiff's Motion for Summary Judgment on the layoff/severance pay dispute is GRANTED, and that the Defendant's Cross–Motion for Summary Judgment on the disputes over the refund of medical insurance premiums and the maintenance of medical and dental benefits for disputes is GRANTED.

It is further ORDERED that the parties proceed to arbitrate the layoff/severance pay dispute according to the procedure set forth in Article XIX of the Agreement.